Anne E. SPENCER, Plaintiff,

v.

GENERAL ELECTRIC
COMPANY, Defendant.

Civ. A. No. 87–1214–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 1, 1989.

Paul C. Sprenger, Jane Lang, Sprenger & Lang, Washington, D.C., for Anne E. Spencer.

Bernard J. DiMuro, Hirschkop, DiMuro & Mook, Alexandria, Va., for James Russell Neal.

C. Richard Miserendino, Fairfax, Va., Peter G. Nash and Frances C. Moran, Ogletree, Deakins, Nash, Smoak & Stewart, Washington, D.C., for General Elec. Co.

## ORDER

ELLIS, District Judge.

This matter is before the Court on plaintiff's petition for a partial award of attorney's fees and costs pursuant to 42 U.S.C. § 2000e–5(k). The trial of this matter, which initially involved more than Title VII claims, consumed eight days, involved the testimony of twenty witnesses and the admission of almost 40 exhibits.[1] At the con-

---

1. In her Complaint, plaintiff, a GE employee, alleged that her former supervisor, James Neal, sexually harassed, assaulted, and, on one occasion, raped her. She asserted state tort claims predicated on these actions against both Neal and GE. Against GE, plaintiff also alleged additional tort claims, which the Court dismissed as not cognizable under Virginia law, and Title VII violations on hostile environment and *quid pro quo* grounds. *See Spencer v. General Elec. Co.,* Civil Action No. 87–1214–A (E.D.Va. May 24, 1988) (unpublished Order). At trial, GE was granted a directed verdict on the remaining claims, and plaintiff elected to non-suit her claims against Neal. *Spencer v. General Elec. Co.,* Civil Action No. 87–1214–A (E.D.Va. June 2,

clusion of trial, this Court found defendant General Electric Company (GE) liable for maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Spencer v. General Elec. Co.,* 697 F.Supp. 204, 219–20 (E.D.Va.1988). Plaintiff, however, did not prevail on her other Title VII and tort claims. She now seeks a partial award of $381,580.64 in fees and costs for the claim on which she prevailed.

GE disputes plaintiff's entitlement to any fee award. As a threshold matter, GE contends that plaintiff is not a prevailing party and is, therefore, not entitled to fees or costs under 42 U.S.C. § 2000e–5(k). Even assuming plaintiff jumps this hurdle, GE alleges four independent grounds warranting denial of some or all the fees and costs claimed. First, GE argues that Rule 68, Fed.R.Civ.P., bars plaintiff from receiving fees and costs incurred after February 17, 1988 when GE made, and plaintiff rejected, an Offer of Judgment allegedly more favorable than the final judgment. Second, GE claims fees should be denied because the single claim on which plaintiff prevailed had been fully remedied before her lawsuit was filed. Third, GE contends plaintiff unreasonably rejected "generous" settlement offers, thereby unnecessarily prolonging the litigation. Fourth, fees should be denied, GE claims, because plaintiff's fee request is inflated and insufficiently detailed.

After consideration of the parties' briefs and arguments, the Court concludes that plaintiff is a prevailing party but that Rule 68, Fed.R.Civ.P., precludes her recovery of any fees and costs incurred after GE's February 17, 1988 Offer of Judgment. No other special circumstances preclude recovery of or mandate a reduction in fees before the February 17 Offer. It appearing to the Court, therefore, that plaintiff's request for fees and costs incurred before February 17, 1988 is reasonable, plaintiff is hereby awarded fees and costs in the amount of $56,709.40.

*Analysis*

1. *Prevailing Party*

■ The threshold issue is whether plaintiff is a "prevailing party" under Title VII; only a "prevailing plaintiff" is eligible for "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e–5(k).[2] *See Delta Air Lines, Inc. v. August,* 450 U.S. 346, 351–52, 101 S.Ct. 1146, 1149–50, 67 L.Ed.2d 287 (1981). To qualify as a "prevailing party," a plaintiff need not prevail on every claim or issue raised, but only "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) [quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978) ].[3] *Accord Bonnes v. Long,* 599 F.2d 1316, 1318 (4th Cir.1979). The Fourth Circuit's recent decision in *Child v. Spillane,* 866 F.2d 691 (4th Cir.1989) (Memorandum Opinion), teaches that the cornerstone of the "prevailing party" standard is proof of a causal connection between the relief obtained and a plaintiff's litigation efforts. *Child v. Spillane,* 866 F.2d at 693

---

1988). The trial proceeded to consider the Title VII claims, which were the subject of the Court's Memorandum Opinion. *See Spencer v. General Elec. Co.,* 697 F.Supp. 204 (E.D.Va.1988). In total, the Court's consideration of this case has yielded 27 Orders and one Memorandum Opinion.

**2.** A prevailing defendant may also be a prevailing party, but can only recover attorney's fees if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). *Accord Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 1937 n. 2, 76 L.Ed.2d 40 (1983).

**3.** *Hensley* addressed fee awards under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. Identical principles and standards for awarding fees are applicable to the analogous Title VII fee provision, 42 U.S.C. § 2000e–5(k). *See Hensley v. Eckerhart,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7; *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed. 2d 670 (1980) (*per curiam* ); *E.E.O.C. v. Nutri/System, Inc.,* 685 F.Supp. 568, 572 n. 1 (E.D. Va.1988); S.Rep. No. 1011, 94th Cir., 2d Sess. 4 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912.

[citing *Disabled in Action v. Pierce*, 789 F.2d 1016, 1019 (3d Cir.1986)]. The standard is not unduly rigorous:[4] A plaintiff need only prove that her efforts " 'contributed in a significant way' to the winning of benefits or relief from the 'factual/legal condition that the fee claimant has sought to change,' "[5] or merely " 'served to a limited extent to expedite the planning and achievement gained.' "[6] Here, plaintiff has met this standard and demonstrated the requisite causal connection. She is, therefore, a "prevailing party."

First, plaintiff has demonstrated, as the "prevailing party" standard implicitly requires, that some demonstrable relief was obtained from the condition plaintiff attacked. Here, plaintiff's legal victory was limited. She prevailed only on one of several claims. She successfully proved that GE allowed the maintenance of a sexually hostile environment in violation of Title VII. But she failed to prove any *quid pro quo*, that is, that any job benefits hinged on her submission to her former supervisor's improper sexual advances. Nor did she carry her burden on the assorted tort claims launched against GE. For her efforts, court-ordered relief was minimal: Plaintiff received only $1.00 in nominal damages. No additional damages were awarded because plaintiff failed to prove that she suffered any tangible loss, and injunctive relief was rejected as unnecessary. *See Spencer*, 697 F.Supp. at 219–20;

*Spencer v. General Elec. Co.*, 703 F.Supp. 466 (E.D.Va.1989).[7] For the purpose of determining a "prevailing party," however, the measure of relief obtained is not strictly limited to the terms of the formal judgment. *Child v. Spillane*, 866 F.2d at 692–693. Neither the absence of a monetary damage award nor the failure to win equitable relief precludes a plaintiff's designation as a "prevailing party" for the purpose of awarding costs and attorney's fees. *Ganey v. Garrison*, 813 F.2d 650, 651 (4th Cir.1987) (per curiam).[8] Here, significant relief from the illegal condition alleged and proved was voluntarily provided by GE. First, individual relief for plaintiff had been largely obtained by the time she filed suit. At her request, plaintiff was promptly removed from the hostile environment and transferred to a comparable position in a different GE office and location. *Spencer*, 697 F.Supp. at 215. GE also promptly investigated plaintiff's complaint and, as a result, demoted and later fired Neal, the employee chiefly responsible for the harassment.

More significantly, however, GE also moved to provide more broad-based relief. Specifically, it recently adopted a comprehensive anti-sexual harassment policy. GE's former policy, in effect during the harassing incidents suffered by plaintiff, "was not sufficiently specific to inform plaintiff that sexual harassment was pro-

4. The "prevailing party" standard is admittedly "a generous formulation that brings plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.' " *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939.

5. *Child v. Spillane*, 866 F.2d at 693 [quoting *Disabled in Action v. Mayor and City Council of Baltimore*, 685 F.2d 881, 886 (4th Cir.1982) which, in turn, quoted *Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir.1979)].

6. *Disabled in Action*, 685 F.2d at 886 [quoting *United Handicapped Federation v. Andre*, 622 F.2d 342, 348 (8th Cir.1980)]. *Accord Child v. Spillane*, 866 F.2d at 693.

7. Nominal damages were awarded in recognition of plaintiff's success on a significant issue, namely, proving that GE maintained a hostile work environment. Injunctive relief was de-

nied for two reasons: (1) GE had remedied the sexual harassment that triggered Title VII liability, namely by demoting and later firing Neal, the GE employee primarily responsible for creating the hostile environment; and (2) GE had acted effectively to prevent future illegal conduct by adopting a comprehensive anti-sexual harassment policy. *See Spencer*, 697 F.Supp. at 219; *Spencer*, 703 F.Supp. at 468.

8. *See also Burt v. Abel*, 585 F.2d 613, 618 (4th Cir.1978) ("The fact that plaintiff may prevail on the merits yet ... recover only nominal damages shall in no way diminish his eligibility for attorney's fees under § 1988...."). Importantly, however, limited recovery may be a factor properly considered in determining the level of reasonable fees. *See Cobb v. Miller*, 818 F.2d 1227, 1234 (5th Cir.1987); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n. 28 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978); *Burt v. Abel*, 585 F.2d at 618.

hibited." *Spencer*, 697 F.Supp. at 218 n. 16 [citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72–73, 106 S.Ct. 2399, 2408–2409, 91 L.Ed.2d 49 (1986)]. The new policy, in contrast, defines and explains sexual harassment and advises employees of their right to redress through the company's confidential complaint procedure which, if necessary, bypasses employees' immediate supervisors. *Spencer*, 697 F.Supp. at 216; *Spencer*, 703 F.Supp. at 472. That policy—prefaced by a strong GE management statement against sexual harassment—is set forth in the employees' handbook, promoted through extensive management training, and also directly communicated to employees through corporate newsletters, orientation sessions, and written directives from managers. *See Spencer*, 703 F.Supp. at 471–473. In sum, GE, through its revised policy, has voluntarily taken "concrete, effective steps designed to minimize the risk of recurrence" of the illegal conditions which prompted plaintiff's suit. *Id.* at 473. This policy represents a clear and substantial benefit, not only for plaintiff as a current GE employee, but for all GE employees throughout the Washington, D.C. metropolitan area.[9]

Plaintiff has also demonstrated a causal connection between this benefit and her lawsuit. Based on the extensive documentation provided by both parties and the Court's knowledge of the chronology of events in this case, the Court is convinced that plaintiff's litigation efforts served as a catalyst for the prompt development and promulgation of GE's revised policy. At the very least, her efforts have " 'served to

a limited extent to expedite' " the development and promulgation of GE's policy. *Disabled in Action*, 685 F.2d at 886 [quoting *United Handicapped Federation v. Andre*, 622 F.2d 342, 348 (8th Cir.1980)]. *Accord Child v. Spillane*, 866 F.2d at 693. Even accepting, *arguendo*, GE's contention that its policy revisions were prompted by internal recommendations long before plaintiff filed her lawsuit, the revision process still took more than two years. Plaintiff's complaint was filed with GE in October, 1986. In November 1987, when plaintiff filed this suit, the policy was still in the early stages of development. Not until May, 1988, on the eve of trial, did GE promulgate a draft version of their revised anti-sexual harassment policy. *Spencer*, 697 F.Supp. at 218 n. 16.[10] The timing of the revised policy was more than coincidental. Just as the Court does not question GE's good faith in implementing this revised policy, the Court similarly does not question the important role plaintiff's litigation efforts undoubtedly played in the implementation timetable, if not in the scope and detail of the policy's terms. Because plaintiff clearly contributed to the relief obtained, she is a prevailing party and is, therefore, eligible for an award of attorney's fees.[11]

The contrary result of *Child v. Spillane*, 866 F.2d 691 (4th Cir.1989), stems from facts distinguishable from the case at bar. In *Child*, a kindergarten student suffering from Acquired Immune Deficiency Syndrome (AIDS) was excluded from school on November 4, 1987. The school advised the

9. The specific policy submitted to the Court by GE is targeted to its Military and Data Systems Operations unit in the Washington, D.C. area. The record does not indicate whether steps are being taken to replicate this commendable policy in the company's other divisions.

10. As late as December, 1988, the Court acknowledged that plaintiff, in her motion to amend the judgment, had raised legitimate questions concerning the effectiveness of GE's remedial steps, prompting the Court to direct GE to submit additional documentation substantiating its revised policy. Those submissions ultimately persuaded the Court that GE had taken adequate steps to remedy the Title VII violation and to prevent future violations. And in January,

1989, implementation of the policy was completed when the Court denied plaintiff's motion for permanent injunctive relief. But by February 1988, when GE formally offered, in general terms, to maintain a policy, plaintiff's role as a catalyst in prompting GE's actions was essentially completed.

11. *See Katz v. Dole*, 709 F.2d 251, 253 n. 1 (4th Cir.1983) (Even if plaintiff not entitled to damages or reinstatement to her former position, she "might be entitled to nominal damages and attorneys fees."); *accord Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.1982); *Joshi v. Florida State University*, 646 F.2d 981, 991 n. 33 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982).

Child's parents that the exclusion was temporary, pending a review of the Child's medical records to determine what risks, if any, the Child posed to her classmates and school employees. At the suggestion of the local health department, the school formed a medical review committee to evaluate the Child's medical condition. On December 22, 1987, the Child's attorneys were informed by the school that the committee would meet to make recommendations on December 29, 1987, or at their convenience. At the same time, the school board's attorneys, in conversations with the Child's attorneys, offered to advance the meeting to December 23, if necessary, and asked that suit not be filed until after the meeting. Notwithstanding this offer, the Child's attorneys promptly filed suit on December 22, 1987, under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, seeking the Child's readmission to school. Two days later, and five days ahead of schedule, the medical committee met and recommended that the Child be permitted to return to school. On January 2, 1988, the school board unanimously voted to allow the Child's return after the Christmas holidays. Upon the Child's return, the district court dismissed her suit without prejudice on the ground of mootness and awarded her attorney's fees, as the "prevailing party." The Fourth Circuit reversed, holding that the Child was not a "prevailing party." *See Child*, 866 F.2d at 691. Specifically, the *Child* court found that her lawsuit "did not contribute to or expedite the readmission of the Child to kindergarten" and, indeed, was "unnecessary since the Defendants had already initiated the process for determining whether the Child was to be readmitted on an expedited basis." *Id.* at 693. The Fourth Circuit also rejected the Child's claim that her efforts had prompted the school board's development of a special

admissions policy for children with AIDS. *Id.* at 694. Because such a policy is not required by law and no evidence supported the Child's claim that the school had acted unreasonably in their treatment of her, she could not take credit for, or rely on, the policy to establish herself as a "prevailing party."

The case at bar is distinguishable in two key respects. First, here, unlike *Child*, there is persuasive evidence that plaintiff's efforts played a role in the pace of the policy development and the nature of the policy ultimately adopted. The events here spanned more than two years. Because plaintiff's efforts and GE's relief efforts continued simultaneously throughout the entire period, it may be inferred from the chronology of events—and, moreover, the evidence supports the inference—that plaintiff helped spur GE's actions and shape the relief ultimately provided. In *Child*, in sharp contrast, the relevant events extended no more than two months. There, the court found little evidence to suggest that the actions of the school in reviewing the Child's case were prompted in any way by the Child's lawsuit. The second distinction is also significant. The *Child* court specifically noted the absence of any indication that the school had, at any point, treated the Child unfairly. *Child*, 866 F.2d at 693. The Child could not, therefore, take credit for the school's promulgation of a new AIDS policy to address future similar situations. *Id.* Here, in contrast, plaintiff successfully proved at trial that GE's actions or, more precisely, inaction violated clearly-established law. When confronted with such a violation, this Court has the power to order, as a form of equitable relief, the implementation of such a policy to ensure, to the extent practicable, that such violations do not recur.[12]

12. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (Where racial discrimination has been found, "'the [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'") [quoting *Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965)]; *Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262, 1274, 1276 (10th Cir.1988) (in Title VII cases, court may award any equitable remedies necessary "to advance the dual statutory goals of eliminating the effects of past discrimination and preventing future discrimination.").

Though not required by law,[13] GE's anti-sexual harassment policy, therefore, played a central role in GE's remedying an unlawful condition. In short, the legal victory of the plaintiff at bar was far clearer and her role in the remedy far more direct than in *Child*. Plaintiff has, therefore, satisfied the "prevailing party" test under the principles of *Child v. Spillane*.

### 2. *Statutory Fee Award*

As a prevailing party, plaintiff is eligible for an award of attorney's fees. *See* 42 U.S.C. § 2000e–5(k). This Court has limited discretion to deny her a fee award "unless special circumstances would render such an award unjust." *Bonnes v. Long*, 599 F.2d 1316, 1318 (4th Cir.1979) [quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam)].[14] GE argues that four special circumstances in this case render an award of fees to plaintiff unjust: (1) Plaintiff is barred by Rule 68, Fed.R.Civ.P., from receiving fees incurred after GE's February 17, 1988 Offer of Judgment, *see Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); (2) GE had fully remedied the single claim on which plaintiff prevailed before her lawsuit was even filed, *see Chastang v. Flynn and Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir.1976); *McCrary v. New York Life Ins. Co.*, 84 F.2d 790, 794–95 (8th Cir.1936) [cited with approval in *Bonnes v. Long*, 599 F.2d at 1319]; (3) plaintiff unreasonably prolonged and multiplied this action unreasonably by making outrageous settlement demands and refusing reasonable offers, *see Vocca v. Playboy Hotel of Chicago*, 686 F.2d 605 (7th Cir.1982); and (4) plaintiff's

fee petition is "grossly inflated" and insufficiently specific in its allocation of time between compensable and non-compensable claims. *See Sun Publishing Co. v. Mecklenburg News*, 823 F.2d 818, 820 (4th Cir. 1987). The Court ultimately concludes that Rule 68 precludes the award of fees incurred after February 17, 1988, but that GE's remaining arguments are unpersuasive.

### a. Rule 68 Offer of Judgment

■ Plaintiff here seeks an award of fees and costs spanning almost two years, including time spent preparing this fee petition. Rule 68, Fed.R.Civ.P., however, specifically precludes her recovery of costs and fees after February 17, 1988. It provides, in pertinent part, that:

> [a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer....

As the Supreme Court confirmed in *Marek v. Chesny*, "[t]he plain purpose of Rule 68 is to encourage settlement and avoid litigation. [citations omitted] The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek v. Chesny*, 473 U.S. at 5, 105 S.Ct. at 3014.

---

**13.** Nothing in the statute, regulations, or case law requires employers to maintain specific anti-sexual harassment policies. *See generally* 42 U.S.C. § 2000e *et seq.; Meritor Savings Bank v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 2409, 91 L.Ed.2d 49 (1986) (noting only that an employer without an adequate policy may be liable for hostile work environment claims). Title VII Guidelines merely suggest that "[a]n employer should take all steps necessary to prevent sexual harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and

how to raise the issue of harassment under Title VII, and developing methods to sensitize all concerned." 29 C.F.R. § 1604.11(f) (1988). Whether these optional steps are taken remains the choice of each employer.

**14.** *See also Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (*Piggie Park* standard applied to § 1988 claims); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975) (noting, in *dicta*, application of *Piggie Park* standard to Title VII's attorney's fees provision).

In essence, the Rule offers to defendants [15] a unique enforcement tool that adds "teeth" to the "salutary principle that a prevailing party should not be permitted to inflate a fee award by using unreasonable settlement demands to extend a case." *E.E.O.C. v. Nutri/System, Inc.*, 685 F.Supp. 568, 578 (E.D.Va.1988). *See also Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir.1982) (prevailing plaintiff denied fees in age discrimination case because of unreasonable settlement demands). Use of the Rule is thus particularly well-suited for cases where recovery is probable but the amount is uncertain. *Delta Air Lines, Inc.*, 450 U.S. at 352, 101 S.Ct. at 1150.

In this case, a valid Rule 68 Offer was made and rejected. On February 17, 1988 —long before the Rule's deadline, more than 10 days before the trial began on May 23, 1988—GE tendered to plaintiff a written offer to have judgment entered against it:

(1) In the amount of ten thousand dollars ($10,000), plus costs and reasonable, reimbursable attorneys' fees (as determined by the Court) which have accrued to date;

(2) Reinstating all discretionary holidays, vacation days, personal illness days and personal business days utilized by the plaintiff since October 1, 1986;

(3) Requiring that G.E. provide plaintiff with a position with the same rights and obligations as if she had never left her prior position, including, without limitation, the same overtime and promotional opportunities and the same job retention requirements that would have been available to her had she remained employed as a Graphics Specialist at G.E.'s Springfield, Virginia facility;

(4) Requiring that G.E. maintain and communicate a policy against sex discrimination in the work place; and

(5) Enjoining G.E. from engaging in any employment practice in violation of rights of plaintiff secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*

Plaintiff rejected GE's Offer of Judgment. Because the final judgment obtained by plaintiff was not more favorable than the terms of the Offer, this Court is precluded from awarding to plaintiff fees for services rendered after that Offer. *See Marek v. Chesny*, 473 U.S. at 11–12, 105 S.Ct. at 3017–3018.

In comparing the final judgment for plaintiff with GE's Rule 68 Offer, the Court considers not only relief formally ordered by this Court, but also relief voluntarily provided by GE in the course of the litigation. In essence, the Court compares the positions of the parties at the time of the Offer to their positions at the end of trial. Here, a point by point comparison of what was offered and what was actually received—though somewhat akin to comparing the proverbial apples and oranges—supports the Court's conclusion that GE's Offer was more generous than the relief plaintiff ultimately received.

Initially, the most striking difference between GE's Offer and the final judgment is the monetary award: GE offered $10,000 and the Court awarded only $1. GE's Offer also included reimbursement for costs and reasonable attorney's fees, for which plaintiff is also now eligible after the final judgment. In strict dollar terms, therefore, plaintiff sustained a substantial loss by refusing the Offer. On the second term of vacation time, holidays, sick leave and the like, plaintiff received, at best, comparable, but clearly not more, relief. GE promised to reinstate all holidays, vacation time, personal illness days, and personal business days used by plaintiff from the time her complaint was first filed with GE. The Court did not require reinstatement because GE had already paid plaintiff for the extensive sick leave she had taken from the time she reported the harassment, including time used to file and perfect her Equal Employment Opportunity Commission (EEOC) complaint against GE and to

---

**15.** Rule 68, by its terms "a party defending against a claim," may only be used by defendants. Rule 68, Fed.R.Civ.P.; *Delta Air Lines,* *Inc. v. August*, 450 U.S. 346, 350, 101 S.Ct. 1146, 1149, 67 L.Ed.2d 287 (1981).

litigate this suit. Third, GE offered to place plaintiff in a position comparable to her former position in the Springfield, Virginia facility. In fact, by the time of the Offer—indeed, as soon as plaintiff filed her internal complaint—she had been transferred to GE's Reston, Virginia facility with comparable employment opportunities. At trial, the Court specifically rejected plaintiff's claims for reimbursement of lost overtime and promotional opportunities, finding no evidence that these opportunities at her new position were inferior to those available at her former job. *See Spencer*, 697 F.Supp. at 219 & n. 19. GE's Offer on this term and the final relief received, therefore, were comparable, if not identical.

The cornerstone of plaintiff's achievement in this case—and, indeed, a primary basis on which she is a prevailing party—was GE's implementation of a comprehensive anti-sexual harassment policy. As already noted, plaintiff's complaint and subsequent lawsuit sparked GE's review and revision of its employee policy. GE's Offer, though not specific in its terms, implicitly acknowledged the need for improvement and offered to "maintain and communicate a policy against sex discrimination in the work place." The differences between the offered policy and the final product implemented at the end of 1988 are in the details, not the substance. Indeed, in a factual vacuum, one might conclude that these differences, namely, the superior scope and detail of the final policy, arguably overwhelm even a $9,999 damages difference. But this conclusion misses the mark; there is no factual vacuum in the case at bar. On the contrary, this Court has the benefit of voluminous documentation and its familiarity with the progression of events in this case. Each policy—the offered policy and the promulgated policy—must, therefore, be measured against the parties' positions and conduct at the time of the Offer. In February 1988, plaintiff had neither directly challenged GE's then-existing policy, nor demanded any specific policy changes to redress her grievances. GE, in the meantime, had already begun to develop a new policy draft, copies of which had been provided to both plaintiff and the EEOC during its 1987 investigation of her complaint. Clearly, therefore, GE's Offer suggested more than simply maintaining the old GE policy under which the Title VII violations occurred. Precisely how far GE was planning to go in its revisions was not made clear. What was clear, however, was GE's willingness to develop and implement a policy designed to prevent harassment. Plaintiff questions GE's good faith, suggesting that without the continued pressure of litigation, the resulting policy would have been a mere shell of its current form. GE, of course, disputes the effect of plaintiff's role, if any, in the finished product, arguing instead that the final policy reflected the natural culmination of its own internal review processes. The Court is persuaded plaintiff's suit was a catalyst in the development of the policy. But the Court is not persuaded that the same result would not have been reached had plaintiff sought clarification of the details of the proffered policy at the time of the Offer. Put another way, whatever incremental improvements or clarifications were achieved in the policy by continuing to litigate could have been achieved by seeking clarification and further details of the terms of the Offer. In essence, the catalytic effect was essentially over in February, 1988.[16] Based on these factors, the Court concludes, therefore, that the final judgment was not more favorable than GE's Rule 68 Offer.

The final term of GE's Offer does not alter the Rule 68 equation. GE's offer to be enjoined "from engaging in any employment practice" in violation of plaintiff's Title VII rights demonstrates GE's willingness to agree to a comprehensive judgment. Ultimately, plaintiff received no eq-

---

**16.** Significantly, plaintiff did not seek a clarification of the terms of GE's Offer, but rejected it out of hand. Certainly if that single term regarding the proposed policy addressed the primary relief sought or represented the only impediment to settlement, plaintiff should have pursued further negotiations to clarify the specific provisions of an acceptable policy. Her failure to do so reflects that a policy was not an important focus of her suit.

uitable relief. In this respect, the Offer does not go beyond GE's statutory obligation, but it is more than plaintiff received in the final judgment. It helps confirm the Court's conclusion that Rule 68 applies to bar post-offer fees in this case.

In sum, the final judgment in this matter —including both court-ordered and voluntarily offered relief—was not more favorable than the terms of GE's Rule 68 Offer of Judgment. Accordingly, plaintiff is barred from receiving an award of fees and costs incurred after February 17, 1988, the date of the Offer. Fees and costs incurred before that date are unaffected. Absent special circumstances, therefore, an award to plaintiff of fees for the pre-Offer period depends only on the reasonableness of her request.

### b. Other Special Circumstances

■ No other special circumstances warrant the denial or further reduction of plaintiff's fee request. First, contrary to GE's assertion, the hostile work environment alleged and ultimately proved by plaintiff had not been fully remedied by the time she filed suit. Plaintiff's claim not only attacked the harassing conduct which resulted in a hostile work environment, but also challenged more generally the GE management policy that tolerated its creation. GE's old policy, the Court found, was not "sufficiently specific to inform plaintiff that sexual harassment was prohibited." *Spencer*, 697 F.Supp. at 218 n. 16

[citing *Meritor Savings Bank v. Vinson*, 477 U.S. at 72–73, 106 S.Ct. at 2408–2409]. Thus, GE's development of a revised and, presumably, more effective policy to prevent, confront, and remedy harassing conduct played a critical role in remedying the Title VII violation. And this policy had not yet been completed in November, 1987, when plaintiff filed suit. But by February 17, 1988, when the Offer of Judgment was made, GE had clearly gotten the message: the Offer acknowledged the need for and offered to maintain such a policy. This Court cannot ignore the role plaintiff's suit undoubtedly played in spurring GE to this action.[17] In short, it is clear that, although some progress had arguably been made, GE had not fully remedied plaintiff's hostile environment claim before plaintiff filed suit.

■ Nor does the evidence demonstrate that plaintiff unreasonably prolonged the litigation by refusing reasonable settlement offers before the Rule 68 Offer. Indeed, GE admits that the Rule 68 Offer was its first settlement proposal to plaintiff. And, in hindsight, as previously noted, plaintiff's acceptance of GE's Rule 68 Offer of Judgment would have been far more prudent than proceeding to trial. Under Rule 68, plaintiff already must forfeit all fees incurred after that Offer—a penalty, and in this case a fairly substantial one, for her refusal to accept defendant's Offer. Under these circumstances, no further penalty is warranted.[18]

---

17. The case at bar is easily distinguished from *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir.1976), one of the principal cases cited by GE. In *Chastang*, the court declined to infer that plaintiffs' lawsuits contributed to the employer's corrective actions. *Id.* at 1045. There, however, the employer had acted "with reasonable dispatch" to correct violations "as soon as a murky area of the law was clarified." *Id.* Indeed, it had acted even before the employees' suits were filed. Here, in contrast, GE's actions were not taken independent of plaintiff's claim nor were they fully completed before she filed suit.

18. This case is distinguishable from *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir.1982), where the court denied a prevailing party all fees. There, the plaintiff had demanded more than seven times the amount to which

he was actually entitled, claiming that the employer "could afford to pay more." *Id.* at 606. He also refused settlement offers for only slightly less than the amount to which he ultimately agreed. *Id.* at 608. On the basis of this record, a denial of all fees was held appropriate. *Id.* In the case at bar, plaintiff's initial demands were admittedly far in excess of what she received. As the Court noted, "her claims for monetary relief hinged on her allegations that she was subjected to *quid pro quo* harassment and sexual assaults." *Spencer*, 697 F.Supp. at 219. Moreover, GE made no offers of settlement until the Rule 68 Offer in February, 1988. Her refusal to accept this Offer was not so outrageous as to justify the denial of all fees.

Note, however, that GE made other settlement offers after the Rule 68 Offer. Given the Court's ruling on the Rule 68 issue, those offers are not relevant. Were they to have been relevant,

■ Finally, plaintiff's fee petition, at least for the period before the Rule 68 Offer of Judgment, is not grossly inflated or fatally imprecise. Rather, it appears that plaintiff's counsel have, to the extent practicable, excised from their fee request services relating to plaintiff's unsuccessful tort claims. Though their efforts were not wholly successful, the allocations are not so unreasonable that all fees should be denied. Nor are the level of fees requested for the pre-Offer period "grossly inflated," as GE contends.[19] This is not a case like *Sun Publishing Co. v. Mecklenburg News*, 823 F.2d 818, 820 (4th Cir.1987), where the plaintiff, after having been awarded approximately $300,000 in fees, sought an additional $41,000 in fees incurred in the preparation for a single two and one-half hour hearing. *Id.* at 819–20. Such a claim, given that the fee already awarded was $200,000 more than the judgment, "shock[ed] the conscience of [the Fourth Circuit] as it did the conscience of the district judge." *Id.* at 820. The case at bar does not rise to this level of outrageousness. After two years of legal effort, plaintiff is only eligible to receive approximately $50,000 in legal fees, by operation of Rule 68. An award of this amount, given plaintiff's success in proving a Title VII violation, does not shock this Court's conscience.

In sum, the award of attorney's fees to plaintiff, at least for the period preceding GE's Rule 68 Offer, would not be unjust. Indeed, a fee award in this case serves the underlying policy of statutory fee awards, namely, to encourage individuals injured by discrimination to seek judicial relief. *See Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966. Plaintiff acted not only for herself, but also as a "private attorney general" in

"vindicating a policy that Congress considered of the highest priority." *Id.* Such efforts, unless without merit, should be encouraged whenever possible. No circumstances presented here suggest otherwise.

### 3. Pre–Offer Fees

■ The determination of the reasonableness of a fee request is left to the sound discretion of the district court, and its judgment will not be disturbed absent an abuse of discretion. *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988); *Nutri/System, Inc.*, 685 F.Supp. at 573. The burden, however, lies squarely on plaintiff to submit sufficiently detailed documentation to establish the reasonableness of the fee award sought. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987), *cert. denied*, — U.S. —, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Here, plaintiff has, for the most part, successfully carried her burden; her fee request for the period prior to February 17, 1988, is reasonable. Accordingly, plaintiff is awarded fees in the amount of $52,179.00, local counsel fees of $2,252.20, and costs and expenses of $2,278.20.

The proper analysis of fee petitions is straightforward and well-established. In calculating what a reasonable attorney's fee is in each case, the Court's target is the "lodestar figure," that is, the product of the number of hours reasonably spent on compensable legal tasks and a reasonable hourly rate. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939; *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir.1986). In reaching that target, the Court must consider the effect on the proposed fee award of a variety of factors, including the following:[20]

---

however, the Court notes that plaintiff's refusals to accept the post-February offers may have risen to the level of outrageousness found in *Vocca.*

19. See *infra* pages 1244–48 for a more detailed analysis of the reasonableness of the level of fees requested.

20. The process by which a district court in this Circuit determines a reasonable attorney's fee award was changed slightly after *Blum v. Sten-*

*son*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). There, the Supreme Court expressed concern that a court's initial calculation of a "lodestar figure" and subsequent adjustments to that figure based on a consideration of the factors first enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) would result in "double-counting" of some factors. *Blum*, 465 U.S. at 900, 104 S.Ct. at 1549. Put simply, a court would have already factored in many of these variables in arriving

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (embracing factors initially set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). *Accord Spell v. McDaniel,* 824 F.2d at 1402 n. 18. Each of these factors is considered in determining whether the hours logged and the rates charged are reasonable in the circumstances.

The first calculation is the number of hours reasonably spent on this matter (factor 1). On this point, "[p]roper documentation is the key...." *Nutri/System, Inc.,* 685 F.Supp. at 573. The Court may reduce or even deny a plaintiff's fee request if she fails to provide adequate documentation. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Here, plaintiff has provided sufficiently reliable, contemporaneous, and fairly detailed records of her attorneys' services to allow this Court to " 'weigh the hours claimed against [the Court's] own knowledge, experience, and expertise of the time required to complete similar activities,' " and to excise hours not reasonable expended. *Nutri/System, Inc.,* 685 F.Supp. at 573 [quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 714]. Notwithstanding defendant's claim to the contrary, the Court finds that plaintiff, in her petition, has made a good faith effort to exclude hours spent for ultimately unsuccessful claims. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939.[21] Given her limited recovery and the several claims on which she failed, this self-reduction is wise and appropriate here.[22] After a careful review of plaintiff's records, the Court concludes that the reduced number of hours claimed by plaintiff's petition is reasonable under the circumstances of this case.

Plaintiff's proposed hourly rates, the second calculation required, are high, but not unreasonable for this area.[23] Here, plain-

---

at a reasonable hourly rate and reasonable number of hours for the "lodestar figure." To alleviate this concern, analysis of these *Johnson* factors now contributes to the calculation of the "lodestar figure." *Lilly v. Harris–Teeter Supermarket,* 842 F.2d 1496, 1511 (4th Cir.1988); *Daly v. Hill,* 790 F.2d at 1077–78. If the lodestar figure is properly calculated, therefore, it represents a reasonable fee award and needs no adjustments. *Daly v. Hill,* 790 F.2d at 1078.

**21.** This conclusion applies only to pre-Offer fees. The Court has not examined the post-Offer fee allocation, as to which a different conclusion might be appropriate.

**22.** The Court's judgment limited plaintiff's eligibility for fees to the successful hostile environment claim. *Spencer,* 697 F.Supp. at 219. There is some authority that in appropriate circumstances, a plaintiff may be eligible for fees

incurred during the prosecution of unsuccessful claims, provided they were sufficiently related to the successful claim and the overall relief obtained was reasonably related to the number of hours reasonably expended. *See Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. at 1943; *Spell v. McDaniel,* 616 F.Supp. 1069 (E.D.N.C. 1985), *aff'd in part, vacated and remanded in part,* 824 F.2d 1380 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). This case does not warrant the full award of all fees. Plaintiff here has wisely accepted, in effect, this up-front reduction in fees by explicitly declining to seek fees related to her unsuccessful claims.

**23.** Although a total of five attorneys and five legal assistants ultimately worked on this case, only two attorneys and three legal assistants provided compensable services before February 17, 1988. For Mr. Sprenger and Ms. Lang, the

tiff has furnished sufficient affidavits in support of the various rates charged by the attorneys and assorted paralegals and research assistants involved in this case. Consideration of each of the *Johnson* factors confirms the reasonableness of these rates for the relevant period.[24] GE disagrees, arguing that certain factors demand a reduction in fees. Overall, however, the Court finds that no single factor identifies any special circumstances justifying either a reduction or an increase in the proposed hourly rates. These factors are discussed below in the order in which they became relevant to the case.

Initially, in considering the difficulties a Title VII plaintiff may encounter in retaining counsel, the Court does not doubt plaintiff's claim that a Title VII case may be viewed as undesirable, to some extent, among various segments of the bar (factor 10). Yet, plaintiff has neither suggested nor demonstrated that the denial of an increase in the rate charged in recognition of this factor will render these cases any less desirable. No change in the hourly rate, therefore, is warranted. Two other factors concerning the commencement of the case—the nature of plaintiff's relationship with her attorneys (factor 11) and the attorneys' expectations at the outset of the litigation (factor 6)—are not relevant here. Plaintiff apparently retained her attorneys only for the duration of this matter. And no evidence was presented to suggest that the attorneys had unusual expectations warranting special consideration.

Plaintiff has also failed to demonstrate that her attorneys suffered substantial opportunity costs during the course of the litigation (factor 4). Although the attorneys ultimately invested a great deal of time in the case, the amount of time attributable to the pre-Offer period does not justify any increase in the rate. Similarly, the strict time limitations imposed by this Court did not substantially affect the progress of the case before February 1988 (factor 7). Even if they had, this factor alone does not justify any increase because the same limitations are imposed on all parties in all cases in this division. Nor were the issues raised in this case either so novel or so difficult as to warrant an increase in the attorneys' rates (factor 2). Presumably, the rates already reflect the substantial experience of plaintiff's attorneys in handling these issues, as well as their familiarity with this particular field of law (factor 3, 9). Thus, even if the issues had been difficult, plaintiff's attorneys claim—and charge for—the requisite expertise, experience, reputation, and ability to master the task.[25]

Although conceding that the proposed rates reflect the customary rates charged by plaintiff's attorneys (factor 5), GE argues that plaintiff's rates are unacceptably high in comparison to the rates awarded in similar civil rights cases (factor 12).[26] Here, however, affidavits submitted by plaintiff demonstrate that the rates charged by Mr. Sprenger and Ms. Lang are comparable to those customarily charged,

lead attorneys, plaintiff proposes hourly rates of $215 and $195, respectively. Rates of $50 for two of the legal assistants and $35 for the third are also proposed. The Court notes that recovery of fees for paralegals' services as part of an overall award of attorney's fees is clearly permissible in the Fourth Circuit. *Herold v. Hajoca Corp.,* 864 F.2d 317, 322 (4th Cir.1988); *Lilly v. Harris–Teeter Supermarket,* 842 F.2d 1496, 1510 (4th Cir.1988).

24. If, however, the Court were reviewing the entire course of litigation, rather than only the pre-Offer period, this conclusion might well be different.

25. GE concedes that plaintiff's attorneys enjoy admirable reputations. It questions, however, whether their performances matched the level

of expertise and skill suggested by these reputations. Because of the limited temporal focus of the Court's analysis—that is, only the period before February 17, 1988—the Court need not address GE's challenge here. The Court has little evidence on which to base a comparison of the attorneys' reputations against their performances during that period of time.

26. *See, e.g., Herold v. Hajoca Corp.,* 682 F.Supp. 297, 301 (W.D.Va.1988), *aff'd,* 864 F.2d 317 (4th Cir.1988) (attorney's proposed hourly rate of $110 was found reasonable); *King v. Palmer,* 43 Fair Empl. Prac. Cases (BNA) 1166 (D.D.C.1987) [1987 WL 4801] ($135 approved as reasonable); *Wright v. U.S. Department of Agriculture,* 41 Fair Empl. Prac. Cases (BNA) 1391 (D.Md.1986) [1986 WL 12804] ($130 approved as reasonable, based on survey of rates in Baltimore area).

and received in other fee awards, by GE's counsel and by similarly experienced attorneys in this market area. The Court, therefore, declines to find them *per se* unreasonable. Next, GE suggests that the rates be reduced to reflect rate distinctions between trial and non-trial time, work and travel time. Specifically, GE contends the rates should be lowered to reflect the fact that the bulk of the work performed before the Offer of Judgment was out-of-court. GE is correct: No trial time was logged before February 17, 1988. There is, however, no persuasive authority offered by GE that requires such a reduction under these circumstances. In the absence of a compelling reason to do so, the Court declines to reduce plaintiff's proposed rates. Finally, GE insists that it not be billed at the regular rate for the cost of plaintiff's out-of-town counsel travelling from Minnesota, his office location, and Washington, D.C. During the relevant period, however, plaintiff has not claimed any travel expenses for flights between Minnesota and D.C. Nor does Mr. Sprenger, the out-of-town counsel, log any travel time before February 1988. In fact, plaintiff claims a total of no more than $25.00 in local travel expenses. No rate reduction is, therefore, warranted.

Finally, in determining a reasonable fee, the Court must compare the results obtained and the fee awarded (factor 8). *Hensley,* 461 U.S. at 424, 434–37, 103 S.Ct. at 1933, 1939–41. Here, the relief won by plaintiff was limited and difficult to measure. In her Complaint, plaintiff originally sought more than $1 million in compensatory and punitive damages, backpay, and lost promotions. She was denied virtually all of this monetary relief. Nor was she awarded any equitable relief. Even so, she prevailed on one significant claim and substantially contributed to the primary form of relief obtained here—GE's revised anti-sexual harassment policy. Although a close question, the Court ultimately concludes that the very limited fees allowed during the Rule 68 period—$52,179, to be exact—are not so disproportionate to the results obtained as to compel a further reduction in the fee award.[27]

Although incurred after the February 17 Offer, plaintiff is also entitled to receive fees attributable to the preparation of this fee petition. *Ganey v. Garrison,* 813 F.2d 650, 652 (4th Cir.1987); *Daly v. Hill,* 790 F.2d 1071, 1080 (4th Cir.1986). Even if plaintiff had accepted GE's Offer of Judgment, she would have prepared a fee petition because GE's Offer included reasonable attorney's fees and costs. Yet, the time and effort that would have been expended on the more limited pre-February 17 petition would have been substantially less than was required for this fee petition. Accordingly, the Court awards plaintiff one-third the cost of preparing the fee petition, or $2,201.90.[28]

A similar rough cut is required for plaintiff's request for local counsel fees. Plaintiff submitted a single lump-sum figure of $11,261, covering the entire period of local counsel's services, or roughly eleven months. There were no time or activity breakdowns. Given that local counsel was

---

**27.** Plaintiff suggests that a thirteenth factor, the contingency nature of the fee agreement, deserves mention. In some cases, the fact that an attorney accepting a worthy case on a contingency basis undertakes substantial financial risks and, at best, deferred income may be justification for an increase in the hourly rate awarded. *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 3089, 3094, 97 L.Ed.2d 585 (1987). That is not this case. Here, if plaintiff had accepted the Rule 68 Offer more than one year ago, including its award of reasonable attorney's fees, plaintiff's attorneys would have been compensated within a reasonable period of time. The delay in payment, therefore, is attributable to plaintiff's, not the Court's, actions.

**28.** As this Court noted recently in *Nutri/System, Inc.,* "[m]athematical precision is rarely achievable" when determining a reasonable fee award. *Nutri/System, Inc.,* 685 F.Supp. at 578. Indeed, such precision would, in many instances, require a "full scale second trial"—the result being that the attorney's fee issue would become the proverbial tail that wags the dog. *Id.* at 578 n. 21. Such a result is neither desirable nor appropriate. *See Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941 ("A request for attorney's fees should not result in a second major litigation.")

engaged for a little more than two months before the Offer of Judgment, or approximately twenty percent (20%) of the total time period, the Court awards plaintiff twenty percent (20%) of the total requested, or $2,252.20.

### 4. *Pre–Offer Costs*

In addition to attorney's fees, a prevailing plaintiff is entitled to compensation for her costs and expenses before the Rule 68 Offer. *See Daly v. Hill,* 790 F.2d at 1084 & n. 18. Here, plaintiff seeks approximately $2,278 for costs, including local travel, meals, telephone calls, photocopying, mailing and messenger fees, and witness fees. After careful consideration of GE's challenge of these figures, the Court concludes that they are reasonable and hereby awards plaintiff the full $2,278.20 in costs and expenses.

In accordance with the conclusions set forth herein, it is hereby ORDERED that plaintiff is awarded a total of $52,179.00 in attorney's fees, $2,252.20 in local counsel fees and $2,278.20 in costs and expenses, for a total of $56,709.40.