William CAPACCHIONE, Individually and on Behalf of Cristina Capacchione, a Minor, Plaintiff,

and

Michael P. Grant, et al., Plaintiff–Intervenors,

v.

CHARLOTTE–MECKLENBURG SCHOOLS, et al., Defendants.

James E. Swann et al., Plaintiffs,

v.

Charlotte–Mecklenburg Board Of Education, et al., Defendants.

Nos. 3:97 CV 482 P, 3:65 CV 1974 P.

United States District Court, W.D. North Carolina, Charlotte Division.

Dec. 13, 1999.

Order Amending Opinion Dec. 16, 1999.

---

John O. Pollard, Kevin V. Parsons, McGuire, Woods, Battle & Boothe, L.L.P., Charlotte, NC, William S. Helfand, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, P.L.L.C., Houston, TX, Lee Meyers, Meyers & Hulse, Charlotte, NC, for William Capacchione, plaintiff.

James E. Ferguson, Luke Largess, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, Adam Stein, Ferguson Stein Wallas Adkins, Gresham & Sumter, Chapel Hill, NC, Elaine Jones, Norman J. Chachkin, Gloria J. Browne, NAACP Legal Defense & Educational Fund, Inc., New York, NY, for Swann Plaintiffs, intervenor-plaintiffs.

James G. Middlebrooks, Irving M. Brenner, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, Allen R. Snyder, Kevin J. Lanigan, Maree Sneed, Rose Marie L. Audette, Hogan & Hartson, L.L.P., Washington, DC, Leslie J. Winner, Charlotte–Mecklenburg Board of Education, Charlotte, NC, for Charlotte–Mecklenburg Schools, the Board of Education of Charlotte–Mecklenburg, Susan Burgess, Chair of the Charlotte–Mecklenburg School

Board, Eric Smith, Dr., Superintendent, defendants.

Irving M. Brenner, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, for Charlotte–Mecklenburg Schools, Charlotte–Mecklenburg Schools, Eric Smith, Dr., Arthur Griffin, intervenor-defendants.

## ORDER

POTTER, Senior District Judge.

**THIS MATTER** is before the Court on Plaintiffs' and Plaintiff–Intervenors' (collectively "Petitioners") Petition for Attorneys' Fees and Expenses arising out of the above-entitled action.

## I. ENTITLEMENT TO ATTORNEYS' FEES

 Petitioners are before the Court on their Petition for Attorneys' Fees and Expenses pursuant to 42 U.S.C. § 1988. *See* Memorandum of Decision and Order, filed September 9, 1999, p. 115, ¶ 7, document no. 202; *Shaw v. Hunt,* 154 F.3d 161 (4th Cir.1998). Under § 1988, the Court, in its discretion, may allow the prevailing party reasonable attorneys' fees and costs. The "prevailing party" inquiry essentially asks whether a causal connection exists between the plaintiff's litigation and the relief the plaintiff has obtained. *Spencer v. General Electric Co.,* 706 F.Supp. 1234, 1236–37 (E.D.Va.1989), *aff'd* 894 F.2d 651, 662 (4th Cir.1990).

In its September 9, 1999 Memorandum of Decision and Order, this Court found that:

1. Charlotte Mecklenburg School System ("CMS") eliminated to the extent practicable the vestiges of past discrimination in the traditional areas of school operations;

2. CMS complied in good faith with the desegregation orders since the close of *Swann;*

3. CMS achieved unitary status in all respects such that all prior injunctive orders should be vacated and dissolved;

4. CMS's magnet school admissions process went beyond the scope of the *Swann* orders by including an inflexible racial assignment provision that was not narrowly tailored;

5. Plaintiff–Intervenors were not entitled to an award of actual damages, but given that the magnet school admissions policy was found to violate the Equal Protection Clause, CMS was nominally liable to Plaintiff–Intervenors in the amount of one dollar ($1.00); and

6. CMS was enjoined from assigning children to schools or allocating educational opportunities and benefits through strict race based lotteries, preferences, set-asides, or other means that denied students an equal footing based on race.

Memorandum of Decision and Order, p. 114, ¶¶ 1–6.

Given these findings, the Court held that Petitioners were the prevailing parties in this litigation and were, therefore, entitled to reasonable attorneys' fees, expert fees, and costs. *Id.* at 115, ¶ 7.

 Contrary to CMS, et al., Swann, et al., and Charlotte Mecklenburg Board of Education's ("CMBOE") (collectively, "Defendants") assertion, the fact that Plaintiff Capacchione did not prevail in a claim for actual damages is not significant. The Court found for Plaintiff Capacchione on the core of his claim that CMS violated Cristina Capacchione's constitutional rights under the Equal Protection Clause. *See Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Accordingly, the Court awarded nominal damages of $1.00. "We therefore hold that a plaintiff who wins nominal damages is a prevailing party under [section]1988." *Id.* at 112, 113 S.Ct. 566. Indeed, to qualify as a prevailing party, a plaintiff need not prevail on every claim or issue raised, but only on any significant issue in the litigation which achieves some of the benefits the parties sought in bringing suit. *Spencer,* 706 F.Supp. at 1236.

 Defendants also argue that Plaintiff Capacchione is not entitled to any fee award because this Court held that he

no longer had standing to achieve forward looking declaratory or injunctive relief. The Court disagrees. Plaintiff Capacchione was obviously a party, named as a Plaintiff. Moreover, the language of § 1988 does not mention Article III standing as a requisition for recovering attorneys' fees and costs. Further, a party who lacks standing can nonetheless take part in a case as a permissive intervenor. *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 459, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

Plaintiffs and Plaintiff–Intervenors have played a significant role in this litigation. Awarding attorneys' fees and costs to both Plaintiffs and Plaintiff–Intervenors is not inconsistent with the law, equity, or the Supreme Court's interpretation of congressional intent.

## II. STANDARDS FOR FEE AWARDS

Petitioners have met the burden of establishing the reasonableness of each fee requested, with the exceptions hereinafter noted.

■ The initial estimate of a reasonable attorneys' fee is properly calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

■ In determining a reasonable fee, the Court considers the factors outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), *overruled on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The twelve *Johnson* factors are as follows:

(1) The time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

It is well-established that the Fourth Circuit has adopted the *Johnson* factors. *Trimper v. City of Norfolk,* 58 F.3d 68, 73 (4th Cir.1995) ("In determining a 'reasonable' attorney's fee under section 1988, [the Fourth Circuit] has long held that a district court's discretion must be guided strictly by the factors enumerated ... in *Johnson* ...."). Accordingly, the Court will apply the *Johnson* factors to each of Plaintiffs' and Plaintiff–Intervenors' attorneys.

## III. THE JOHNSON FACTORS

### 1. Time and Labor Required

*See* Section V below for a discussion of the time and labor required by each of the attorneys involved.

### 2. Novelty and Difficulty of the Questions Involved

As indicated from the trial testimony, pleadings, and exhibits, Plaintiffs' and Plaintiff–Intervenors' counsel had to review thirty years of pleadings and orders of this Court and then do battle with a school board fixed on a defense that it had not complied with the Court's orders and, therefore, should not be considered "unitary." At the same time, Plaintiffs' and Plaintiff–Intervenors' attorneys had to pry from a reluctant school board the public information needed to prosecute the case. For example, the Court sanctioned CMBOE for nondisclosure of witnesses and ordered it to pay Petitioners' attor-

neys' fees of $33,500.00 and expenses of $17,162.00, a total of $50,662.00. *See* Orders filed April 23, 1999 and June 9, 1999, document nos. 166 and 185, respectively. This amount has been paid by CMBOE.

### 3. *The Skill Requisite to Perform the Legal Service Properly*

This was a difficult case that required a good deal of skill to properly prosecute. *See* Section V below for a discussion of the skill demonstrated by each attorney involved.

### 4. *The Preclusion of Employment by the Attorney Due to Acceptance of the Case*

As to this factor, the Court has considered the fact that the actual trial commenced on April 19, 1999 and continued with a one week interruption until June 22, 1999. There were many months of preparation before the trial and many weeks after the trial which consumed more of the attorneys' time. Therefore, the attorneys in this case were significantly precluded from employment in other matters.

### 5. *The Customary Fee*

*See* Section V below for a discussion of the customary and allowed fee for each attorney.

### 6. *Whether the Fee is Fixed or Contingent*

The Court understands this was a contingent fee arrangement, which of course was a risk to Plaintiffs' and Plaintiff–Intervenors' attorneys. The trial lasted approximately three months and required extensive and costly preparation. This risk is a factor which the Court considered in determining its award of fees and costs.

### 7. *Time Limitations Imposed by the Client or the Circumstances*

The Court did not allow the attorneys an excessive amount of time to prepare the case, and pushed all the parties relentlessly to expeditiously complete the case. Therefore, the time limitation imposed on the attorneys was given considerable weight in determining the fee award.

### 8. *The Results Obtained*

Petitioners obtained successful results. Plaintiffs' and Plaintiff–Intervenors' attorneys carried the day completely and, as set forth above, were declared prevailing parties. Accordingly, this factor was given considerable weight in determining the fee award.

### 9. *The Experience, Reputation and Ability of the Attorneys*

*See* Section V below for a discussion of each of the involved attorneys' experience, reputation, and ability.

### 10. *The Undesirability of the Case*

Plaintiffs' and Plaintiff–Intervenors' attorneys were depicted by a great many citizens of this community and the news media as attempting to upset the status quo and deprive the minority and poor students of Mecklenburg County an educational opportunity to which they are entitled. Petitioners were under a duty to produce to the Court evidence which indicated that CMS was for all practical purposes unitary and should no longer be required to remain under Court supervision. Petitioners accomplished this monumental task with all practical speed. Given those facts, and the risks and the hurdles set forth above, this case was undesirable for many attorneys. This factor was considered in determining the proper fee award.

### 11. *The Nature and Length of the Professional Relationship With the Clients*

As far as the Court could discern, none of the attorneys had any prior or ongoing relationship with any of the clients in this matter. This factor was given relatively little weight.

### 12. *Awards in Similar Cases*

Each case must be determined on its own facts. This case was an unusual de-

segregation case given CMBOE's bizarre posture in the case; arguing that it had not complied with the Court's orders for 30 years and, therefore, that it was not unitary. The Court believes this case is as complex as any other school desegregation case with which the Court is familiar. This endeavor constituted the first successful challenge to a court order imposed thirty years ago. Today, after expending millions of dollars and untold hours, the experiment has been concluded largely as a result of Petitioners' efforts against the virtually unlimited resources of Defendants' attorneys, backed by the taxpayers of Mecklenburg County and the NAACP Legal Defense Fund. Petitioners' efforts returned control of the schools to the body best suited and elected to administer them. the local school board, over which the citizens of Mecklenburg County have some control.

## IV. ENHANCEMENT OF FEE

Certain attorneys requested that the fee awards be enhanced by 25%. The Court has considered the facts of this case and the law regarding enhancements. *See generally Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The Court believes that the fees awarded below are adequate and should not be enhanced.

## V. FEE AWARDS

### 1. Thomas J. Ashcraft

According to his affidavit, Mr. Ashcraft graduated from Wake Forest University School of Law in 1978. He was awarded an LL.M. from the University of London in 1979. He has been a member of the North Carolina State Bar and the Bar of the United States District Court for the Western District of North Carolina since approximately August 1978. He is also admitted to practice before the Middle and Eastern Districts of North Carolina, the United States Court of Appeals for the Fourth Circuit, and all state trial and appellate courts in North Carolina. From mid–1987 through the first quarter of 1993, he served as United States Attorney for the Western District of North Carolina. After leaving government service in 1993, he opened a solo law practice in Charlotte, North Carolina. He has been a court certified mediator since the fall of 1993, and has acted as a mediator in numerous federal civil lawsuits. In addition, he has served as an arbitrator and mediator in many matters with the American Arbitration Association.

Mr. Ashcraft is seeking $210.00 per hour, which he declares is his standard hourly rate for clients who pay on a monthly basis. Given Mr. Ashcraft's reputation and experience, the difficulty of this case, and the other *Johnson* factors, the Court finds that $210.00 per hour is a reasonable rate for Mr. Ashcraft.

Mr. Ashcraft submitted a bill for 759.90 hours. The Court finds that each hour is reasonable and that the bill requires no adjustments. Therefore, Mr. Ashcraft is awarded a total of $159,579.00 in fees and costs.

### 2. Parks, Chesin & Miller, P.C.

#### a. A. Lee Parks, Jr.

Mr. Parks graduated from Emory University Law School in 1977. He is admitted to practice before all state trial and appellate courts in Georgia, the United States District Court for the Northern District of Georgia, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court. He is the senior supervising partner in Parks, Chesin & Miller, P.C., and has been the lead counsel in over five hundred § 1983 cases.

Mr. Parks charged a rate of $300.00 per hour for non-travel time and $150.00 per hour for travel time. The Court finds that this is exceedingly fair and reasonable. The undersigned has been on the bench for 18 years and tried numerous cases.

The Court rarely has the privilege of having attorneys appear before it that are more prepared and possess a better grasp of the issues than Mr. Parks.

Mr. Parks expended 135.50 hours of travel time and 1,159.10 hours of non-travel time. The Court finds that each hour is fair and reasonable. Therefore, the total fee award relating to Mr. Parks is $368,055.00.

### b. K. Lee Adams

Mr. Parks' affidavit failed to provide the qualifications of Ms. Adams. The Court has learned from CMS's Response that Ms. Adams was admitted to the bar in 1995. The rate charged for Ms. Adams' non-travel time is $190.00 per hour. CMS complains that Ms. Adams' rate was more than Mr. Brenner (an attorney with Smith, Helms, Mulliss & Moore, LLP), who has more than 13 years experience. This Court agrees that the experience of an attorney is an important factor to consider in determining fee awards. Without any more data than has been furnished to the Court, it will not be able to allow more than $125.00 per hour for Ms. Adams' non-travel time, based in part on the 1998 Law Firm Statistical Survey Billing Rates.

The Court finds that the 812.80 hours expended by Ms. Adams were reasonable.[1] Therefore, the total fee award relating to Ms. Adams is $100,541.00.

### c. Support Staff

Mr. Parks requests 53.3 hours at a rate of $60.00 per hour for Lisa O'Mahony. The Court finds that this is reasonable, for a total award relating to Ms. O'Mahony of $3,198.00.

Therefore, the total award for all attorneys and staff granted to Parks, Chesin & Miller, P.C. is $471,794.00.

### 3. McGuire Woods Boothe & Battle, LLP

#### a. John O. Pollard

Mr. Pollard received his Juris Doctor from the University of North Carolina. Mr. Pollard was admitted to practice law in North Carolina in August of 1973. He is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Fourth, Sixth, Seventh, Eleventh, and District of Columbia Circuits, the United States District Courts for the Western, Middle, and Eastern Districts of North Carolina, and the courts of the State of North Carolina. Mr. Pollard has represented clients in over 500 employment discrimination and other cases.

Mr. Pollard charges a rate of $335.00 per hour. While Mr. Pollard is an experienced attorney and provided excellent representation for his client, the Court will reduce his requested fee to $300.00 per hour. The Court believes a rate of $300.00 per hour is reasonable in this case for this community, especially given the fee awarded to the other attorneys discussed herein. Moreover, the Court notes that Mr. Pollards' involvement was somewhat limited in that he did not appear before this Court during the trial.

Mr. Pollard billed a total of 164.50 hours. The Court finds that certain of these hours should be reduced or deleted given the work performed[2]. The below

---

1. 35.30 of the hours expended by Ms. Adams was travel time charged at a rate of $95.00 per hour, which this Court finds reasonable. The remaining 777.50 hours was non-travel time which, as discussed above, the Court will reduce from $190.00 per hour to $125.00 per hour.

2. The Court reduced for all attorneys certain hours that it deemed unnecessary, redundant, inadequately documented, wasteful, or too time consuming. In particular the Court re-

duced for all attorneys time spent on media relations and McGuire Woods Boothe & Battle, LLP's ("McGuire Woods) potential conflict of interest issue because that issue was not significant, nor a benefit Plaintiff–Intervenors sought in bringing the action. See Leffler v. Meer, 60 F.3d 369, 373 (7th Cir.1995) (holding that the plaintiffs were not prevailing parties entitled to attorneys' fees for successfully securing a remand of the attorneys fees issue because the ruling was unrelated to the

chart summarizes the hours to be reduced or deleted and the corresponding date for Mr. Pollard:

| DATE | HOURS REDUCED/DELETED |
|------|------------------------|
| 1/30/98 | 0.1 |
| 1/30/98 | 0.1 |
| 1/30/98 | 0.5 |
| 2/7/98 | 0.3 |
| 2/9/98 | 1.7 |
| 2/9/98 | 0.5 |
| 2/9/98 | 0.5 |
| 2/10/98 | 0.3 |
| 2/11/98 | 0.1 |
| 2/12/98 | 0.1 |
| 3/2/98 | 0.5 |
| 3/2/98 | 0.3 |
| 3/2/98 | 0.2 |
| 3/4/98 | 0.7 |
| 3/4/98 | 0.7 |
| 3/5/98 | 2.3 |
| 3/5/98 | 0.4 |
| 3/5/98 | 1.1 |
| 3/5/98 | 2.2 |
| 3/5/98 | 0.3 |
| 3/6/98 | 1.0 |
| 3/6/98 | 1.0 |
| 3/19/98 | 0.3 |
| 3/26/98 | 1.0 |
| 3/27/98 | 3.5 |
| 3/27/98 | 1.0 |
| 3/27/98 | 2.0 |
| 6/2/98 | 3.5 |
| 6/3/98 | 1.2 |
| 6/25/98 | 0.3 |
| 10/5/98 | 2.5 |
| 10/15/98 | 3.5 |
| 1/13/99 | 2.5 |
| 3/16/99 | 3.4 |
| 9/13/99 | 2.8 |
| **TOTAL** | **42.4** |

Therefore, the total hours for which Mr. Pollard will be compensated is 122.10

merits of the plaintiffs' claim and the issue was not significant, nor a benefit the plaintiffs

hours. At $300.00 per hour, the fee award relating to Mr. Pollard totals $36,630.00.

b. *Kevin V. Parsons*

Mr. Parsons obtained his Juris Doctor from Notre Dame University. He was admitted to practice law in North Carolina in September 1992. He is admitted to practice before the courts of the State of North Carolina, the United States District Courts for the Western, Middle, and Eastern Districts of North Carolina, and the United States Court of Appeals for the Fourth Circuit. He has represented clients in over 50 employment discrimination and other cases.

Mr. Parsons charged a rate of $195.00 per hour. Given Mr. Parsons' experience and the skill demonstrated during the trial, the Court finds that this rate is fair and reasonable. Mr. Parsons billed a total of 1,552.70 hours. The Court finds that certain of these hours should be reduced or deleted. The below chart summarizes these reductions or deletions:

| DATE | HOURS REDUCED/DELETED |
|------|------------------------|
| 1/30/98 | 0.1 |
| 1/30/98 | 0.5 |
| 2/9/98 | 1.7 |
| 3/2/98 | 0.3 |
| 3/19/98 | 0.3 |
| 3/25/98 | 0.4 |
| 3/26/98 | 1.0 |
| 3/27/98 | 3.0 |
| 3/27/98 | 0.1 |
| 3/27/98 | 3.5 |
| 4/7/98 | 0.1 |
| 6/25/98 | 1.0 |
| 8/18/98 | 0.7 |
| 8/19/98 | 0.6 |

sought in bringing their action).

| | |
|---|---|
| 8/6/99 | 0.5 |
| **TOTAL** | 13.8 |

Therefore, the total hours for which Mr. Parsons will be compensated is 1538.90 hours. At $195.00 per hour, the fee award relating to Mr. Parsons totals $300,085.50.

### c. Richard F. Kane; William T. Cranfill, Jr.; and David L. Terry

Petitioners failed to provide the Court with the qualifications of various attorneys at McGuire Woods, including Messrs. Kane, Cranfill, and Terry. The Court has known them many years, however, as they have all appeared before the Court at one time or another. The Court finds that they are all skillful and reputable attorneys in this community.

Messrs. Kane and Cranfill charge $335.00 per hour in this case, and Mr. Terry charges $300.00 per hour. Given their involvement in this case and the rate allowed other attorneys as discussed above, the Court finds that $300.00 per hour for Messrs. Kane, Cranfill, and Terry is a reasonable and fair rate.

Mr. Cranfill expended 6.4 hours in this case. Mr. Cranfill's 3/6/98 billing entry for 1 hour regarding McGuire Woods' potential conflict issue will be deducted. *See* n. 2. Therefore, the fee award relating to Mr. Cranfill amounts to $1,620.00.

Mr. Kane expended 0.3 hours and Mr. Terry expended 1.1 hours in this case. The Court finds that these hours were reasonably spent. Accordingly, the fee award attributable to Mr. Kane amounts to $90.00, and the fee award attributable to Mr. Terry amounts to $330.00.

### d. Staff

The Petition provides no information regarding the following individuals: Stephen A. Katsurinis; Arden L. Achenberg; L. Michelle Owens; Calvin S. Spencer Jr.; John E. Davidson; Brian A. Kahn; Cindy B. Biggers; June C. Such; and Ashley L. Ledwell (the "Staff"). The Court is unfamiliar with the Staff and assumes they are associates, paralegals, and/or secretaries.

The Court does not believe it is required to search out these individuals in Martindale–Hubbell, the Internet, or other sources of information. Apparently, McGuire Woods did not consider it important enough to include necessary information about its Staff in Messrs. Pollards' or Parsons' affidavits.

Because the Court is unfamiliar with the Staff, it considered denying any compensation to McGuire Woods relating to its Staff. The Court believes that the equitable course, however, is to allow the deductions for the Staff as requested in Defendants' Response. *See* Response, p. 13.

Defendants' Response does not contest the hourly rate charged by the Staff. It requests the following reduction in hours for the below listed individuals:

| STAFF MEMBER | HOURS REDUCED/DELETED |
|---|---|
| Katsurinis | 3.6 |
| Such | 20.5 |
| Achenberg | 7.4 |
| Biggers | 7.9 |
| Owens | 7.2 |

Therefore, after multiplying the allowed hours for each Staff member by his or her approved hourly rate, the fee award for each is as follows:

| STAFF MEMBER | FEE AWARD |
|---|---|
| Katsurinis | $ 3,198.00 |
| Such | $18,560.00 |
| Achenberg | $ 1,332.00 |
| Biggers | $ 2,360.00 |
| Owens | $ 0.00 |
| Spencer | $ 2,102.50 |
| Davidson | $ 1,537.00 |
| Kahn | $ 540.50 |
| Ledwell | $ 2,691.00 |
| **Total** | **$32,321.00** |

### e. Expenses

McGuire Woods requests $19,715.48 in total expenses. The Court finds these expenses reasonable and well documented. Therefore, the request will be granted in full.

After the aforementioned adjustments, the total fee and expenses award due McGuire Woods amounts to $390,791.98.

**566**

### 4. *Magenheim, Bateman, Robinson, Wrotenbery & Helfand, P.L.L.C.*

#### a. *William S. Helfand*

Mr. Helfand received his Juris Doctor in 1987 from Tulane University. In 1987 he was admitted to the Texas State Bar. In 1988 he was admitted to the United States District Court for the Northern, Southern, Eastern, and Western Districts of Texas. In 1990 he was admitted to the United States Courts of Appeals for the Fifth and Sixth Circuits, and the United States Supreme Court. He is a member of the Houston, American, and Federal Bar Associations. He has tried over 100 cases to a jury verdict as lead counsel.

Mr. Helfand charges an hourly rate of $250.00. The Court finds that this is unreasonably high and hereby reduces Mr. Helfand's hourly rate to $200.00 per hour. Although Mr. Helfand had a daily presence at the trial, his actual role was rather limited, relying heavily on local counsel. Moreover, the Court finds that his fees were inadequately documented. The Court spent more time trying to decipher Mr. Helfand's confusing and often duplicative fee statement than all the other attorneys in this case put together. The Court finds that this sloppy work warrants the reduction. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly"). Indeed, given the indecipherable nature of Mr. Helfand's bill statement, any confusion was construed against Mr. Helfand.

Mr. Helfand billed a total of 1,054.40 hours. The Court finds that much of this time was unnecessary, unreasonably time consuming, duplicative, and/or inadequately documented. Therefore, the Court makes the following reductions in Mr. Helfand's billable hours:

| DATE | HOURS REDUCED/DELETED |
|---|---|
| 2/13/98 | 0.7 |
| 2/13/98 | 0.4 |
| 2/13/98 | 0.5 |
| 2/13/98 | 0.2 |
| 2/18/98 | 0.2 |
| 2/23/98 | 3.8 |
| 2/26/98 | 0.8 |
| 3/2/98 | 0.5 |
| 3/2/98 | 0.4 |
| 3/3/98 | 0.4 |
| 3/4/98 | 0.2 |
| 3/4/98 | 0.6 |
| 3/5/98 | 11.0 |
| 3/6/98 | 0.5 |
| 3/9/98 | 2.8 |
| 3/9/98 | 0.5 |
| 3/16/98 | 0.3 |
| 3/17/98 | 0.7 |
| 3/18/98 | 0.3 |
| 3/24/98 | 0.4 |
| 3/24/98 | 0.75 |
| 3/25/98 | 0.6 |
| 3/26/98 | 0.3 |
| 3/27/98 | 10.5 |
| 3/27/98 | 0.4 |
| 4/1/98 | 0.2 |
| 4/1/98 | 1.4 |
| 4/6/98 | 0.4 |
| 4/6/98 | 0.5 |
| 4/7/98 | 0.2 |
| 4/9/98 | 0.2 |
| 4/14/98 | 1.4 |
| 4/23/98 | 1.5 |
| 4/24/98 | 0.6 |
| 11/21/98 | 0.4 |
| 12/10/98 | 3.0 |
| 1/27/99 | 1.0 |
| 3/2/99 | 3.0 |
| 4/20/99 | 1.8 |
| 4/22/99 | 0.5 |
| 4/24/99 | 3.5 |
| 5/4/99 (5/24/99) [3] | 2.5 |

**3.** Wherever there are two dates listed in column 1, *see* Mr. Helfand's supplemental affidavit for explanation.

| | |
|---|---|
| 5/5/99 (5/25/99) | 0.8 |
| 5/6/99 (5/26/99) | 4.0 |
| 5/7/99 (5/26/99) | 2.0 |
| 5/7/99 (5/27/99) | 3.5 |
| 5/10/99 | 5.0 |
| 5/11/99 | 4.5 |
| 5/14/99 | 3.5 |
| 6/10/99 | 1.1 |
| 6/11/99 | 2.0 |
| 6/15/99 | 2.8 |
| 6/28/99 | 4.5 |
| 7/2/99 | 4.5 |
| 8/23/99 | 3.4 |
| 8/25/99 | 3.4 |
| 8/28/99 | 2.9 |
| **TOTAL** | **107.75** |

After the above deductions, the total amount of billable hours for which Mr. Helfand will be compensated is 946.65. At the adjusted rate of $200.00 per hour, the fee award relating to Mr. Helfand totals $189,330.00.

### b. *James W. Karel*

Mr. Karel received his Juris Doctor degree in 1985 from the University of Texas. In 1986 he was admitted to the Texas State Bar, the United States Court of Appeals for the Fifth Circuit, and the United States District Court for the Northern, Southern, and Eastern Districts of Texas. He is a member of the Houston and American Bar Associations.

Mr. Karel charges an hourly rate of $250.00 per hour. For the reasons set forth above in regards to Mr. Helfand, that rate will be reduced to $200.00 per hour. Mr. Karel billed a total of 8.5 hours in this case. The Court finds that these hours were reasonable and do not require a reduction. Therefore, the fee award attributable to Mr. Karel amounts to $1,700.00.

### c. *W. Patrick Garner*

Mr. Garner received his Juris Doctor from South Texas College of Law in 1996. In 1997 he was admitted to the Texas State Bar, and the United States District Court for the Southern District of Texas. He is a member of the American Bar Association, the Houston Bar Association, and the Houston Young Lawyers Association.

Mr. Garner's hourly rate is $175.00. After careful consideration and application of the *Johnson* factors, the Court finds that this is fair and reasonable. Mr. Garner billed 573.60 hours in this case. The Court finds that the charges listed below warrant a reduction or deletion:

| DATE | HOURS REDUCED/DELETED |
|---|---|
| 3/24/98 | 5.0 |
| 3/26/98 | 4.9 |
| 5/7/98 | 1.5 |
| 11/24/98 | 0.7 |
| **TOTAL** | **12.1** |

After the above deductions, the total amount of billable hours for which Mr. Garner will be compensated is 561.5. At the rate of $175.00 per hour, the fee award relating to Mr. Garner totals $98,262.50.

### d. *Tracy B. Glenn*

The only information available to this Court regarding Ms. Glenn was that she obtained admission to the Texas State Bar in 1997. Her hourly rate in this case was $175.00. The Court finds this amount to be reasonable. She billed 56 hours in this case. The Court believes the following hours should be reduced and/or deleted:

| DATE | HOURS REDUCED/DELETED |
|---|---|
| 8/13/99 | 8.5 |
| 8/17/99 | 4.2 |
| 9/1/99 | 0.8 |
| 9/2/99 | 3.5 |
| 9/7/99 | 1.8 |
| **TOTAL** | **18.8** |

After the above deductions, the total amount of billable hours for which Ms. Glenn will be compensated is 37.20. At the rate of $175.00 per hour, the fee award relating to Ms. Glenn totals $6,510.00.

### e. *Expenses*

Mr. Helfand's affidavit requests $34,-828.71 in expenses. Again, the Court notes that the expenses were inadequately documented and the confusion was con-

strued against Mr. Helfand. Accordingly, the Court made the following deductions from the requested expenses:

| DATE | EXPENSE AMOUNT |
|---|---|
| 5/3/99 | $ 289.00 |
| 5/3/99 | $ 242.00 |
| 5/3/99 | $1,136.00 |
| 5/6/99 | $1,136.00 |
| 6/24/99 | $1,136.00 |
| 6/24/99 | $ 224.64 |
| 6/24/99 | $1,136.00 |
| TOTAL | $5,299.64 |

After making the deductions to the requested expense amount, the total expense award is $29,529.07.

After the aforementioned adjustments, the total fee award, including attorneys' fees and expenses, due Magenheim, Bateman, Robinson, Wrotenbery & Helfand, P.L.L.C. amounts to $325,331.51.

## VI. *CONCLUSION*

After careful consideration and application of the *Johnson* factors to this case, the Court awards $1,347,496.49 in attorneys' fees, plus post-judgment interest at a rate of 5.670% *per annum,* to be divided among Petitioners as set forth above.

## *AMENDED ORDER*

THIS MATTER is before the Court on Plaintiffs' and Plaintiff–Intervenors' (collectively "Petitioners") Petition for Attorneys' Fees and Expenses ("Petition") arising out of the above-entitled action.

On December 13, 1999, this Court issued its Order in response to the Petition. The Order awarded Petitioners $1,347,496.49 in attorneys' fees and expenses, plus post-judgment interest at a rate of 5.670% *per annum.*

The portion of the award attributable to Parks, Chesin & Miller, P.C. ("Parks") amounted to $471,794.00. Order, p. 563. This amount was the sum of A. Lee Parks, Jr.'s attorney's fee award of $368,055.00,

K. Lee Adams' attorney's fee award of $100,541.00 [1], and Lisa O'Mahony's fee award of $3,198.00. *Id.* at 562–63. The Court also awarded Thomas J. Ashcraft $159,579.00 in attorney's fees as part of the total fee award. *Id.* at 562.

The Court inadvertently omitted the requested out-of-pocket expenses incurred during the trial by Parks and Mr. Ashcraft. These expenses were set forth in Exhibit D of the Supplemental Affidavit of A. Lee Parks, filed November 8, 1999. The expenses were as follows:

| EXPENSE | AMOUNT |
|---|---|
| Photocopies | $ 8,414.20 |
| Postage | $ 456.07 |
| Facsimile Charges | $ 2,511.52 |
| Long Distance Telephone Charges | $ 1,116.66 |
| FedEx/UPS Delivery and Courier Charges | $ 1,560.84 |
| Diposition Transcripts | $ 14,293.75 |
| Filing Fees | $ 165.00 |
| Outside Reproduction Costs | $ 21,597.43 [2] |
| Travel | $ 11,116.51 |
| Westlaw Computerized Legal Research | $ 501.33 |
| Expert Witness Fees and Expenses: | |
| David Armor | $ 39,165.76 |
| William A.V.Clark | $ 32,899.91 |
| TOTAL | $133,798.98 |

The Court finds these expenses reasonable and well documented. Therefore, the request will be granted in full.

NOW, THEREFORE, IT IS ORDERED that the Court's December 13, 1999 Order be, and hereby is, amended to include an award of $133,798.98 in ex-

---

1. Ms. Adams' hourly rate for non-travel time was reduced from $190.00 per hour to $125.00 per hour due to Ms. Adams' experience.

2. "The outside reproduction costs were incurred at the insistence of CMS who required their documents to be copied by a third party who charged over $20,000 to copy the voluminous documentation CMS produced during the case." Supplemental Affidavit of A. Lee Parks, p. 4, ¶ 9.

penses to Parks and Mr. Ashcraft, plus post-judgment interest at a rate of 5.670% *per annum,* to be divided among Parks and Mr. Ashcraft in accordance with their agreement.